IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kelvin Richardson, #277898, | C/A No.: 1:15-1610-TMC-SVH |
| Plaintiff, | |
| vs. | |
| County of Greenville; John Vandermosten, Assistant County Administrator; Scotti Bodiford, Operations Administrator; Tracy Krein, Medical Administrator; Medical Supervisor Kim Olszewski; Clinical Supervisor Katie Barnes; Nurse Downs; Nurse Johnson; Nurse Gannon; and Nurse Garbacka, | REPORT AND RECOMMENDATION |
| Defendants. | |

Kelvin Richardson ("Plaintiff"), proceeding pro se and in forma pauperis, filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated in the Greenville County Detention Center ("GCDC").[1] He sues Greenville County; Assistant Greenville County Administrator John Vandermosten; GCDC Operations Administrator Scotti Bodiford; GCDC Medical Administrator Tracy Krein; GCDC Medical Supervisor Kim Olszewski; GCDC Clinical Supervisor Katie Barnes; and GCDC Nurses Johnson, Gannon, and Garbacka (collectively "Defendants").

This matter comes before the court on Defendants' motion for summary judgment [ECF No. 37] and Plaintiff's motion for summary judgment [ECF No. 42]. Pursuant to

---

[1] It appears Plaintiff has been released from GCDC. [ECF No. 41].

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 38]. The motions having been fully briefed [ECF Nos. 42, 43],[2] they are ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the record in this case, the undersigned recommends the district judge grant Defendants' motion and deny Plaintiff's motion.

I.     Factual Background

    A.     Plaintiff's Complaint[3]

Plaintiff alleges that he signed up for sick call after being booked into GCDC, because he was not medically screened during the booking process. *Id.* at 6. Plaintiff states that he informed the physician's assistant that he had been diagnosed with chronic arthritis and a protruded lumbar disc "which creates [sciatic] nerve damage." *Id.* Plaintiff alleges that the GCDC medical staff experimented with several different medications over a period of three months "to no avail." *Id.* Plaintiff claims that he informed the staff of his previous prescription, but was told that they were attempting to achieve pain management through the use of non-narcotic medications. *Id.* Plaintiff alleges his

---

[2] Because Plaintiff's motion for summary judgment was filed after the deadline to file dispositive motions and after a *Roseboro* issued, the undersigned also interprets Plaintiff's motion as a response in opposition to Defendants' motion.

[3] Plaintiff has filed a verified complaint, and allegations contained therein are considered the same as an affidavit when they are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

condition worsened. *Id.*

Plaintiff states that GCDC requested his earlier medical records and claims that upon receipt of the records that Dr. O'Malley[4] prescribed him Tramadol 50 mg and Tylenol 500 mg "To Be Taken Together." *Id.* Plaintiff claims that over the next six months, GCDC medical staff did not honor Dr. O'Malley's orders. *Id.* He alleges that he would only receive part of his medication and was told that pharmacy personnel forgot to pull the other part of his medication and that there was nothing they could do. *Id.* Plaintiff claims that on other occasions that he would receive part of his medication and be told that someone else would bring the other portion later. *Id.* at 6–7.

Plaintiff states that he began to experience an increase in pain and discomfort and a decrease in motor skills. *Id.* Plaintiff that over a period of 11 to 12 months that he was denied proper medical care and "left to endure whatever pain and/or discomfort that resulted." *Id.* Plaintiff claims that he filed 39 grievances and complaints, without resolution. *Id.* Plaintiff contends that although administration claimed to have addressed his case, for a three-day time period he only received a portion of his prescribed medications. *Id.* at 7. Plaintiff says that on March 18, 2015, he met with medical supervisor Kim Olszewski regarding his concerns about not receiving both medications at the same time, and she told him that he may not be able to get his medication together. *Id.* at 8. Plaintiff argues that when he does not receive his medication as prescribed, it "disrupts [his] ability to achieve pain management and

---

[4] It appears that GCDC referred Plaintiff to Dr. O'Malley, an orthopedic specialist.

3

defeas the purpose of having been diagnosed by [Dr. O'Malley]." *Id.* at 8. Plaintiff seeks monetary damages and injunctive relief. *Id.* at 11.

B.    Plaintiff's Medical Records

During his booking, a member of the GCDC medical staff met with Plaintiff to address his shoulder pain complaints and, following a standard order, provided him with a three-day supply of ibuprofen and placed him on the sick call list. [ECF No. 37-3 at 8–10]. Four days later, GCDC medical staff saw Plaintiff during a sick call appointment and changed his prescription to a one-week regimen of Naproxen, an anti-inflammatory medication. *Id*. at 11–12. In April 2014, a nurse saw Plaintiff and added a hot water bottle to his treatment, and in early May, an x-ray of Plaintiff's shoulder was ordered and Tramadol (aka Ultram), a controlled substance, and an oral steroid were added as medications. *Id*. at 13–16.

On May 12, 2014, Plaintiff saw an orthopedist, who gave Plaintiff an injection in his shoulder. *Id*. at 18. The GCDC medical clinic saw Plaintiff three times in June 2014, which led to the scheduling of a shoulder MRI that Plaintiff later refused. *Id*. at 21, 23 24–25, 28. Over the following ten months, leading up the filing of this lawsuit, Plaintiff saw an orthopedist six times. *Id*. at 27, 29, 39, 42–44. These doctors tried multiple treatments to address Plaintiff's pain complaints, giving him multiple shoulder injections and ordering different combinations of medicine. *Id*. On November 24, 2014, Dr. O'Malley prescribed Plaintiff Tramadol and Tylenol. *Id*. at 39. Dr. O'Malley ordered these medications be taken three times each day, but gave no instructions on when or in what order Plaintiff was to receive them. *Id*.

4

Although Plaintiff claims O'Malley's order required the medications, "To Be Taken Together" or "AT The Same Time" [ECF No. 1 at 6, 8], Dr. O'Malley's medical note containing the prescription does not contain such a notation [ECF No. 37-3 at 3]. Plaintiff had at least four more appointments with orthopedists after his November appointment with Dr. O'Malley, and no one added an instruction that the Tylenol and Tramadol be taken together each day. *Id.* at 42–45.

Pursuant to Dr. O'Malley's order, beginning on November 24, 2014, GCDC medical staff began delivering Tylenol and Tramadol to Plaintiff three times each day, although the medications were not always delivered simultaneously. *Id.* at 48–53. According to Kim Olszewski, medical supervisor over the pharmacy and logistics at GCDC, with the exception of controlled substances, medicines prescribed for inmates at GCDC are dispensed by a third-party pharmacy, and they arrive in envelopes with the inmate's name appended to them. Olszewski Aff. ¶ 5.[5] GCDC medical staff organize the medicine envelopes by dorm or pod. *Id.* Controlled substances, which are also dispensed by a third-party pharmacy, are not included in the prepackaged envelopes. *Id.* Instead, GCDC stores them in a separate, locked container. *Id.* A limited number of staff have access to the locked container. *Id.* Periodically, personnel who deliver medicine to the dormitories do not retrieve a controlled substance for an inmate because of simple error or unavailability at the time of a person with access to the container. *Id.* Defendants state that if a nurse is in the midst of medicine pass and sees on the medicine sheet that an

---

[5] Olszewski's affidavit may be found at ECF No. 37-2.

inmate is supposed to receive a controlled substance that the nurse does not have, the nurse finishes passing all the medicines she has to the assigned dorms or pods. *Id*. Once medicine pass is complete, the nurse returns to the pharmacy, receives the controlled substance, and delivers the controlled substance to the inmate. *Id*.

Tramadol is a controlled substance and, thus, was not among the medicines included in Plaintiff's envelope. *Id.* at ¶ 6. Periodically, Plaintiff would receive Tramadol separately from Tylenol because Tylenol was in his envelope, while Tramadol was in the separate locked container. *Id*. Although he periodically received the medications separately, Plaintiff received the doses he was prescribed. During the nearly five months between Dr. O'Malley's November 2014 prescription and the date Plaintiff filed this lawsuit, GCDC records show that there were only four days on which Plaintiff did not receive each of his three doses of Tylenol and Tramadol. [ECF No. 37-3].

II.   Discussion

    A.   Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents,

6

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.    Analysis

Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments that "involve the unnecessary and wanton infliction of pain." *Id.* at 103 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

7

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation. *Id.* at 105–06.

The Fourth Circuit also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Sosebee v. Murphy*, 797 F.2d 179, 182–83 (4th Cir. 1986).

Here, Plaintiff has failed to show that the medical care he received at GCDC was so grossly inadequate that it shocks the conscience. He was repeatedly referred to orthopedic specialists and was provided the medication they prescribed. Plaintiff has provided no evidence that his medication required him to take the medications at the

same time. While the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326, 330 n. 2 (S.D. Ga. 1994). The Constitution requires that prisoners be provided with a certain minimum level of medical treatment, but it does not guarantee to a prisoner the treatment of his choice. *Thomas v. Anderson City Jail*, No. 6:10-3270-RMG-KFM, 2011 WL 442053, at *3 (D.S.C. Jan. 19, 2011)*; Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). Plaintiff's belief that he should have received his medication at the same time is insufficient to establish a constitutional violation. Because Plaintiff has failed to show that Defendants' provision of medical care during his confinement at GCDC constitutes deliberate indifference to his serious medical needs, the undersigned recommends that Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the district judge grant Defendants' motion for summary judgment [ECF No. 37] and deny Plaintiff's motion for summary judgment [ECF No. 47].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 12, 2016                                              Shiva V. Hodges
Columbia, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).